| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BERKELEY ) | |
| INFORMAXION SOLUTIONS, INC., ) Plaintiff(s) ) | CIVIL ACTION COVERSHEET<br><br>2014-CP-08-2670 |
| vs. ) | |
| VANTUS GROUP, VANTUS TECHNOLOGY CORPORATION, AND VANTUS MANUFACTURING CORPORATION, ) Defendant(s) ) | |

Submitted By: Mary B. Ramsay, Esquire
Address: Smith Moore Leatherwood LLP
25 Calhoun Street, Suite 250
Charleston, SC 29401

SC Bar #: 00801
Telephone #: 843.300.6659
Fax #: 843.300.6759
Other:
E-mail: mary.ramsay@smithmoorelaw.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

### DOCKETING INFORMATION (Check all that apply)

*If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.    ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

### NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☒ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # 20___-CP-___-___ | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | ☐ Notice/ File Med Mal (230) | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Other (299) | ☐ Personal Injury (350) | ☐ Possession (450) |
| Insurance | | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | ☐ Petition for Workers Compensation Settlement Approval (780) | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | ☐ Other (799) | |
| ☒ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| TRO | ☐ Sexual Predator (510) | | |

Submitting Party Signature: _/s/ M. Ramsay_    Date: 12/9/14

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous

SCCA / 234 (06/2013)                                      Page 1 of 3

| STATE OF SOUTH CAROLINA<br>COUNTY OF BERKELEY | IN THE COURT OF COMMON PLEAS<br>NINTH JUDICIAL CIRCUIT |
|---|---|
| INFORMAXION SOLUTIONS, INC.<br><br>Plaintiff,<br><br>vs.<br><br>VANTUS GROUP, VANTUS TECHNOLOGY CORPORATION, AND VANTUS MANUFACTURING CORPORATION,<br><br>Defendants. | CIVIL ACTION NO. _____<br>20 14 -CP-08- 2670<br><br>SUMMONS |

TO:   THE ABOVE NAMED DEFENDANTS

YOU ARE HEREBY SUMMONED and required to answer the COMPLAINT in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the undersigned at his office located at 25 Calhoun Street, Suite 250, Charleston, SC 29401, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer the COMPLAINT within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

SMITH MOORE LEATHERWOOD LLP

_____
Laura J. Evans
Mary B. Ramsay
SMITH MOORE LEATHERWOOD LLP
25 Calhoun Street, Suite 250
Charleston, South Carolina 29401
Ph. 843.300.6600
Fax 843.300.6700
Laura.evans@smithmoorelaw.com
Mary.ramsay@smithmoorelaw.com

*Attorneys InformaXion Solutions LLC*

December 1, 2014
Charleston, South Carolina

CHARLESTON 54244.1

| STATE OF SOUTH CAROLINA<br>COUNTY OF BERKELEY | IN THE COURT OF COMMON PLEAS<br>NINTH JUDICIAL CIRCUIT |
|---|---|
| INFORMAXION SOLUTIONS, INC.<br><br>Plaintiff,<br><br>vs.<br><br>VANTUS GROUP, VANTUS TECHNOLOGY CORPORATION, AND VANTUS MANUFACTURING CORPORATION,<br><br>Defendants. | CIVIL ACTION NO.<br>2014-CP-08-2070<br><br>COMPLAINT<br>(Jury Trial Demanded) |

TO:   THE DEFENDANT(S) ABOVE-NAMED:

COMES NOW the Plaintiff InformaXion Solutions LLC ("Plaintiff"), by and through the undersigned counsel, complaining of Defendants Vantus Group, Vantus Technology Corporation, and Vantus Manufacturing Corporation (collectively "Vantus" or "Defendant"), respectfully alleging and showing unto this Court as follows:

PARTIES, JURISDICTION & VENUE

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware, which provides IT consulting services to various customers from locations within South Carolina.

2. Upon information and belief, Defendant is a corporation organized and existing under the laws of Wisconsin, with its principal place of business located at S54W29033 Saylesville Road, Waukesha, Wisconsin.

3. This matter arises out of the breach by Plaintiff of a Professional Services Agreement ("Agreement") for consulting services executed by the parties. A copy of the Agreement that is the subject of this action is attached hereto as **EXHIBIT A**.

CHARLESTON 54222.1

4. This Court has jurisdiction over the parties hereto and the subject matter hereof pursuant to S.C. Code Ann Section 15-5-150.

5. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

6. On or about April 9, 2014, the parties executed the Agreement (**EXHIBIT A**), which included a Statement of Work ("SOW") to be performed (**EXHIBIT B**).

7. Plaintiff has fulfilled the obligations of both the Agreement and the SOW.

8. Plaintiff provided Defendant with semi-monthly invoices as required by the Agreement, which included hourly charges for the detailed work necessary to fulfill the Agreement and SOW, as well as hard costs incurred (such as travel and meeting-related expenses).

9. Despite Plaintiff' performance of its obligations under the Agreement and SOW, Defendant has failed to pay a single invoice.

10. Despite its continued refusal to pay the outstanding invoices, Defendant has not timely disputed any portion of any of the invoices as required by Paragraph 2 of the Agreement and, therefore, is deemed to have accepted the invoices.

11. Plaintiff has attempted on several occasions to discuss negotiation and payment of invoices with Defendant; however, Plaintiff' inquiries and requests for discussion have gone unanswered.

## FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

12. Plaintiff repeats and realleges each and every allegation heretofore contained in this Complaint as if fully set forth herein verbatim.

13. As set forth above, Plaintiff has complied with its obligations under the Agreement and SOW with Defendant.

2

14. Defendant has failed to pay any of the invoices provided by Plaintiff and has failed to timely dispute any such invoices.

15. As a result, Defendant is in breach of the Agreement.

16. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered and is entitled to recover actual damages from Defendant in the amount of the unpaid invoices totaling Ninety One Thousand Nine Hundred Ninety-Six and 86/100 Dollars ($91,996.86).

17. Pursuant to the Agreement, Plaintiff is also entitled to recover a monthly penalty charge of 1.5% of the unpaid balance.

18. Plaintiff is further entitled to recover prejudgment and post-judgment interest from Defendant, as well as attorneys' fees and costs related to its attempts to collect on monies due it and related to prosecution of this action.

## FOR A SECOND CAUSE OF ACTION
(Unfair Trade Practices)

19. Plaintiff repeats and realleges each and every allegation heretofore contained in this Complaint as if fully set forth herein verbatim.

20. Defendant's actions in the conduct of its business, which are capable of repetition and intended to be repeated, affect the public interest and are characterized both by unfairness and deception, and therefore constitute willful violations of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. Section 39-5-10, *et seq.*

21. Accordingly, Plaintiff is entitled to an award of actual, consequential, and special damages, as the direct and proximate result of Defendant's willful, knowing violations of the South Carolina Unfair Trade Practices Act, in amounts to be determined by the trier of fact, as well as treble damages, attorneys' fees and costs.

3

CHARLESTON 54222.1

## FOR A THIRD CAUSE OF ACTION
(Unjust Enrichment)

22. Plaintiff repeats and realleges each and every allegation heretofore contained in this Complaint as if fully set forth herein verbatim.

23. Plaintiff provided consulting services pursuant to the Agreement and SOW for the benefit of Defendant, and these services were accepted, used and enjoyed, and/or the benefits of these services were otherwise realized by Defendant.

24. The retention of the benefits of such services by Defendant would, under the circumstances, make it inequitable for Defendant to retain the same without paying the value thereof.

25. The fair and reasonable value of the services provided to and unjustly retained by Defendant is Ninety Seven Thousand Thirty-One and 76/100 Dollars ($97,031.76), including the contractual amount owed and the monthly penalty charges (which continue to accrue). Despite demands, Defendant has refused and continues to unreasonably refuse to pay Plaintiff the money owed for the services provided.

26. Under the doctrine of unjust enrichment, Plaintiff is entitled to recover against Defendant the sum of Ninety Seven Thousand Thirty-One and 76/100 Dollars ($97,031.76), together with interest, costs and disbursements, and attorneys' fees as may be allowed.

WHEREFORE, Plaintiff InformaXion Solutions LLC prays for judgment against Defendant to include its actual damages, attorneys' fees, costs and disbursements, prejudgment and post-judgment interest, and for such other and further relief as the Court may find just and proper.

*SIGNATURE BLOCK ON FOLLOWING PAGE*

4

CHARLESTON 54222.1

SMITH MOORE LEATHERWOOD LLP

_____
Laura J. Evans
Mary B. Ramsay
SMITH MOORE LEATHERWOOD LLP
25 Calhoun Street, Suite 250
Charleston, South Carolina 29401
Ph. 843.300.6600
Fax 843.300.6700
Laura.evans@smithmoorelaw.com
Mary.ramsay@smithmoorelaw.com

*Attorneys InformaXion Solutions LLC*

December 9, 2014
Charleston, South Carolina

5

EXHIBIT A



## PROFESSIONAL SERVICES AGREEMENT

This Professional Services Agreement (the "Agreement") is entered into as of April 7, 2014 ("Effective Date") between Informaxion Solutions, LLC ("IXS"), with its principal offices at 110 N. Christophers Run, Alpharetta, GA 30004, and Vantus Group ("Company"), having its principal offices at S54W29033 Saylesville Road, Waukesha, WI 53189 (each a "Party," and collectively, the "Parties").

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and with the intent to be legally bound, the Parties agree as follows:

1. Definitions.

(a) "Confidential Information" means any design, specification, idea, concept, plan, copy, formula, drawing, procedure, business process, organizational data, customer or supplier lists, or other business or technical information that the disclosing party holds confidential or considers proprietary, whether oral, written or viewed by inspection, that is obtained as a result of services rendered by IXS to Company in connection with this Agreement.

(b) "Deliverables" means any documentation or related materials identified on the Schedule(s) appended to this Agreement as Deliverables. Deliverables shall not include software, which shall be separately licensed.

(c) "Schedule" means a signed Statement of Work which includes the description of services, fees and related information, which shall be binding between the parties, which is attached hereto as Schedule A.

(d) "Services" means the customization, consulting, training and other services described on the Schedule(s) appended to this Agreement provided to Company by IXS.

2. Services. IXS may, from time to time, perform Services for Company and or tender certain Deliverables which will be described in and agreed to in writing by the parties on the Schedule(s) that reference this Agreement. Said Services shall be performed during the period specified in the Schedule(s). All payments will be due to IXS within thirty (30) days of the date of IXS's invoice. Within thirty (30) days of the date of the invoice, Company will notify IXS in writing of its good faith dispute of any portion of the invoice. If Company fails to notify IXS within such thirty (30) day period, it shall be deemed to have accepted the invoice. Late payments shall be subject to a monthly penalty charge of 1.5% of any unpaid balance. IXS reserves the right to immediately terminate this Agreement upon Company's failure to make a payment of any undisputed amounts owed within thirty (30) days of the date of IXS's invoice.

3. Relationship. IXS's relationship to Company hereunder is one of independent contractor and nothing contained in this Agreement or the Schedule(s) shall be construed to imply that either Party or its officers, employees or agents is an employee or agent of the other for any purpose. Neither Party shall have the right, power or authority to create any obligation, expressed or implied, or to make any representation on behalf of the other, except as may be expressly authorized from time to time by such Party in writing and then only to the extent of such authorization. Nothing herein is to imply an agency, joint venture or partner relationship between the parties.

4. IXS's Representations and Warranties. IXS represents and warrants to Company that:

(a) IXS's execution and performance of this Agreement and the Schedule(s) shall not constitute a breach or default under any contract, instrument or agreement to which IXS is a party or by which IXS is bound and shall not violate or interfere with the rights of any other party;

(b) the Services performed and the Deliverables tendered hereunder shall be of professional quality, conforming to generally accepted industry standards and practices for similar services and deliverables. For breach of this warranty, Company's sole remedy will be to require IXS to re-perform the Services at no additional fee or revise the Deliverables to bring them into conformance;

(c) for any Deliverable provided by IXS to Company under this Agreement, IXS has full power and authority to grant any license herein granted without the consent of any other party. For breach of this warranty, Company's sole remedy (in addition to any indemnification obligations), at IXS's option, will be to (i) alter the Deliverable to make it non infringing, while maintaining the same functionality, or (ii) provide a prorated refund to the Company of the fees paid for the Deliverable; and

(d) THE WARRANTIES SET FORTH IN THIS SECTION 4 ARE THE ONLY WARRANTIES MADE BY

IXS, AND NO OTHER WARRANTIES ARE PROVIDED TO COMPANY OR ANY THIRD PARTY AND, EXCEPT FOR THE SPECIFIC WARRANTIES PROVIDED HEREIN ALL SERVICES AND DELIVERABLES ARE PROVIDED "AS IS." IXS DISCLAIMS ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. IXS FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES ARISING FROM USAGE OF TRADE AND COURSE OF DEALING. COMPANY IS RESPONSIBLE FOR MAINTAINING BACK-UPS OF DATA AND SOFTWARE AND IXS SHALL NOT BE RESPONSIBLE FOR ANY OF COMPANY'S INFORMATION, DATA, AND OR SOFTWARE THAT MAY BE LOST, DAMAGED, OR CORRUPTED.

5. Company's Representations and Warranties. Company represents and warrants to IXS that Company's execution and performance of this Agreement and the Schedule(s) shall not constitute a breach or default under any contract, instrument or agreement to which Company is a party or by which Company is bound and shall not violate or interfere with the rights of any other party.

6. Confidential Information.

(a) Except as required for the performance of Services hereunder, neither Party shall use or disclose to any third party any Confidential Information of the other Party. IXS and Company agree to take all necessary steps to protect any Confidential Information with at least the same degree of care that such Party uses to protect its own confidential and proprietary information of like kind, but not less than reasonable care. Neither Party shall use Confidential Information other than to perform Services or obligations in accordance with this Agreement and for the creation and tendering of Deliverables in accordance with this Agreement. The obligation of confidentiality hereunder shall not apply to information that: (i) was already in the possession of either Party without restriction on its use or disclosure prior to the receipt of the information from the other Party; (ii) is or becomes available to the general public through no act or fault of the receiving party; (iii) is rightfully disclosed to the disclosing party by a third party without restriction on its use or disclosure; (iv) is independently developed by employees and or consultants of either Party who have not had access to the Confidential Information; or (v) is required to be disclosed pursuant to a judicial or governmental decree or order, provided that the applicable Party is given prompt notice of and the opportunity to defend against disclosure pursuant to such decree or order.

(b) Upon completion of any Services under the applicable Schedule(s), all Confidential Information shall be promptly delivered to Company or IXS, as applicable, destroyed or deleted.

7. Work Product.

(a) All right, title and interest in and to any Deliverables shall be retained by IXS.

(b) Any and all software programs provided by IXS must be licensed under a separate software license agreement.

(c) IXS may customize the licensed software for Company, which may be performed under this Agreement ("Customization Work"). IXS shall solely own all right, title and interest in and to such Customization Work and any derivative works it makes or has made from the Customization Work.

(d) Nothing contained herein shall prohibit IXS from using any of IXS's general knowledge or knowledge acquired under this Agreement to perform similar services for others; provided, however, that in providing services to others, IXS shall not use any of Company's Confidential Information, including, without limitation, Company business methods and processes.

8. Indemnification.

(a) IXS shall indemnify, defend, and hold harmless Company, its affiliates, directors, officers, employees and agents from and against any and all suits, claims, demands, losses, damages, costs and expenses of any nature whatsoever including, without limitation, litigation expenses, attorneys' fees and liabilities incurred in connection therewith, arising out of any third-party claim that the Deliverables infringe any U.S. patent or copyright of a third party. Company agrees to (i) promptly notify IXS in writing of any suit or any claim of infringement; (ii) cooperate with IXS in IXS's defense of any such claim; and (iii) not settle any claim without IXS's prior written consent.

(b) Company shall indemnify, defend, and hold harmless IXS, its affiliates, directors, officers, employees and agents from and against any and all suits, claims, demands, losses, damages, costs and expenses of any nature whatsoever including, without limitation, litigation expenses, attorneys' fees and liabilities incurred in connection therewith, arising out of any third-party claim related to Company's breach of this Agreement. IXS agrees, at Company's expense, to (i) promptly notify Company in writing of any suit or any claim related to Company's breach of this Agreement; (ii) cooperate with Company in Company's defense of any such claim; and (iii) not settle any claim without Company's prior written consent, such consent not to be unreasonably withheld.

(c) If a claim covered by the infringement indemnification pursuant to Paragraph 8(a) has been made, IXS shall have the right to, at its option and expense, either: (i) obtain for Company the right to continue using the Deliverable or (ii) replace or modify the Deliverable so that such Deliverable becomes non-infringing. In the event that, after exhausting commercially reasonable efforts, IXS is unable to obtain either of the above two results, then IXS shall return all

amounts paid by Company under the applicable Schedule relating to the infringing Deliverable.

9. Limitation of Liability. IN NO EVENT SHALL IXS BE LIABLE TO COMPANY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR RELIANCE DAMAGES (INCLUDING, WITHOUT LIMITATION, LOST OR ANTICIPATED REVENUES OR PROFITS) ARISING OUT OF THIS AGREEMENT OR COMPANY'S USE OF THE DELIVERABLES, ON ANY THEORY OF LIABILITY EVEN IF IXS IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT FOR THE INDEMNIFICATION OBLIGATIONS UNDER SECTION 8(a), IXS'S TOTAL LIABILITY UNDER THIS AGREEMENT IS LIMITED TO THE TOTAL FEES PAID TO IXS PURSUANT TO THE SCHEDULE UNDER WHICH THE APPLICABLE CLAIM AROSE.

10. Term and Termination. The term of this Agreement shall be for a period of ___ year(s) or as long as any Schedule is in effect, whichever is longer. IXS may terminate this Agreement for Company's material default hereunder by providing written notice, unless such default is cured within ten (10) days of such written notice. Notwithstanding the foregoing, there shall be no cure period for Company's breach of this Agreement due to non-payment.

11. Notices. Any notice or other communication required or permitted hereunder shall be in writing and shall be deemed delivered on the date of personal delivery or confirmed facsimile transmission or confirmed delivery by a nationally recognized overnight courier service, and shall be addressed as noted in the preamble of this Agreement.

12. Performance. IXS shall not be liable for failure or delay in performing its obligations hereunder if such failure or delay is due to circumstances beyond its reasonable control, including, without limitation, acts of any governmental body, war, insurrection, terrorism, sabotage, embargo, fire, flood, strike or other labor disturbance, interruption of or delay in transportation; unavailability of, interruption, or delay in telecommunications or third party Internet service providers; or failure of third party Internet service providers.

13. Non-solicitation. During the term of this Agreement, and for a period of one (1) year thereafter, Company and IXS will not directly or indirectly solicit for employment the employees of the other without the other party's prior written consent.

14. Miscellaneous. This Agreement and any Schedule attached hereto embody the entire understanding between the Parties. The terms set forth in any Schedule shall take precedence over any conflicting terms and conditions set forth herein relating to the subject matter hereof. Should any provision of this Agreement be held unenforceable or in conflict with the law of any jurisdiction, the validity of the remaining provisions shall not be affected by such holding. Company shall not assign, convey, encumber, or otherwise dispose of this Agreement or any rights or obligations hereunder without the prior express written consent of IXS. This Agreement shall be binding upon the heirs, successors, permitted assigns and/or legal representatives of the parties. The law of the Commonwealth of Virginia shall govern this Agreement without regard to its principles of conflicts of law.

AGREED AND ACCEPTED:

INFORMAXION SOLUTIONS, LLC

By: _____

Name: Brian J. Lee

Title: Managing Partner

Date: 10-APR-14

Email: blee@informaxionsolutions.com

VANTUS GROUP:

By: _____

Name: James Schroeder

Title: President & CEO

Date: _____

Email: james@vantus.com

EXHIBIT B



# Vantus Group

## Program Office Management Support

## Schedule A Statement of Work

Prepared by InformaXion Solutions, LLC

April 9, 2014
V1.1



# Contents

Contents .................................................................................................................................. ii
   Confidentiality ..................................................................................................................... ii
   Validity ................................................................................................................................ ii
Executive Summary ............................................................................................................... 1
Incorporation .......................................................................................................................... 4
Contacts ................................................................................................................................. 5

Infinite Energy

## Confidentiality

The material contained in this Schedule A Statement of Work represents proprietary, confidential information pertaining to IXS products, software and services deployment methods. By accepting delivery of this document, Vantus Group hereby agrees that the information in this document shall not be disclosed outside of Vantus Group and shall not be duplicated, used, or disclosed for any purpose other than to evaluate this proposal. If, however, this Statement of Work is agreed to by Vantus Group, Vantus Group will have the right to duplicate, use or disclose the material contained herein to the extent provided for in the resulting services.

## Validity

This proposal shall remain valid thirty (30) calendar days from the date of this Statement of Work. InformaXion Solutions reserves the right to make changes in specifications and other information contained in this document without prior notice until the Statement of Work is signed by Vantus Group.

Copyright 2014 InformaXion Solutions LLC. All rights reserved.



ii

Infinite Energy

# Schedule A
# Statement of Work

This Schedule A Statement of Work ("SOW") to the Professional Services Agreement ( the "Agreement") between Informaxion Solutions, LLC ("IXS") and Vantus Group ("Vantus"), hereby incorporates by reference those terms and conditions of the Agreement between the parties dated _____, 2014.

## Executive Summary

Informaxion Solutions LLC (IXS) is pleased to respond to the Vantus requirement to provide organization and leadership in the role of the Program Management Office (PMO). This SOW is for a block of hours in support of a variety of activities, tasks and the coordination of Vantus events orchestrated or executed by the PMO. The initial intent of the PMO is to organize, support and execute the necessary activities and tasks to facilitate the Vantus Greenfield project.

## Tasks, Deliverables, and Assumptions

### PMO Support

IXS will begin by working with the Vantus President & CEO to assess tasks assigned as part of the PMO support agreement, provide a level of effort estimate for the task(s), and deliver the requested services as planned. There will be a minimum of a weekly PMO coordination calls where the activities of the Vantus PMO will be identified/reviewed, scheduled and agreed upon. At times the PMO may leverage the services of a Program Coordinator to support the execution of specific tasks and the recording of key meetings or events.

This PMO support may be used for any Vantus related support including the planning, communication and coordination of Vantus activities and events including setting up workshops, and other Vantus PMO related tasks as requested. This support will also include a framework and design of a Vantus Group Program Management Office (PMO) and Role Description for the TEAM of SIX PMO Chief of Staff position.

The key deliverable for this statement of work will be a weekly status report for the duration of the SOW that will provide a detailed list of the date, description, and hours expended for each task performed by IXS during that reporting period. The Weekly Project Status Reports will include a listing of planned PMO activities for purposes of planning and estimating the effort hours associated with upcoming tasks and activities. The weekly report will include a summary of PMO hours expended to date and the remaining SOW hours.

Copyright 2014 InformaXion Solutions LLC. All rights reserved.

IXS

1

Infinite Energy

## Deliverables
- Weekly Project Status Reports
- PMO Framework and Design

## Assumptions

1. The services under this schedule will be performed beginning upon date of award and concluding in six (6) months or when the funding is exhausted, whichever comes first unless the term is changed or additional funding is added in accordance with the Agreement.

2. Normal business hours phone and e-mail support will be available between 8:30 AM – 5:30 PM EST Monday thru Friday. Alternate time zone support or additional after hour working hours may be negotiated as necessary to meet the requirements of the customer.

3. IXS will work primarily at their office locations and at the Vantus offices as agreed upon by both parties.

4. IXS will invoice Vantus on a semimonthly basis for actual hours expensed during the previous reporting period. The payment terms will be Net 30.

5. Vantus will acknowledge receipt and approval of weekly status reports within three (3) business days of delivery.

6. Vantus understands and agrees that IXS' ability to provide Services and Deliverables is dependent upon the active and timely participation of, and access to, the appropriate Vantus resources and subcontractors as may be required during the performance of this engagement.

7. All documents will be delivered in native Microsoft Office format via electronic mail.

8. IXS will staff the project at its discretion with consultants and/or subcontractors with the appropriate skills to successfully complete the project's tasks and deliverables.

9. Required travel related to the activities of the PMO will be reviewed and agreed upon with Vantus prior to purchase of tickets and/or incursion of expenditures.

10. The role descriptions for TEAM VANTUS will be developed in collaboration with Deloitte Consulting.

Copyright 2014 InformaXion Solutions LLC.   All rights reserved.



2

Infinite Energy

# Fees Summary

The table below summarizes the estimated costs. The cost estimates are based on a time and materials basis for providing the PMO support. For this fee summary, we have estimated a total allocation of 360 hours to be available over six (6) months. The break-out is as follows:

## Estimated Services Fees

| Description | Labor Rates | Estimated Hours | Total Services Fees |
|---|---|---|---|
| Don Sturdivant | $280.00 | 200 | $56,000.00 |
| Brian Lee | $280.00 | 80 | $22,400.00 |
| Program Coordinator I | $100.00 | 80 | $8,000.00 |
| Total Services Estimate | | 360 | $86,400.00 |
| Estimated Travel Expenses | | | TBD |
| Grand Total Expenses | | | $86,400.00 |

NOTE: Vantus shall reimburse IXS for all reasonable and documented travel, lodging and meal expenses at actual cost that are directly associated with the performance of the above services. IXS will charge all reasonable out-of-pocket expenses. Out-of-pocket expenses include such items as travel, lodging, airport parking, and/or mileage at the rate published by the IRS. All expenses shall be reimbursed for actual out-of-pocket amounts.

Copyright 2014 InformaXion Solutions LLC. All rights reserved.



3

**Infinite Energy**

## Incorporation

IN WITNESS WHEREOF, the parties hereto each acting with proper authority have executed this Statement of Work. This Schedule is issued pursuant to the Agreement. All of the terms and conditions of said Agreement, including any amendments thereto, are incorporated herein and made a part hereof as if such terms and conditions were set forth in this Schedule.

AGREED AND ACCEPTED:

| InformaXion Solutions LLC | Vantus Group |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: BRIAN J. LEE | Name: *[illegible]* |
| Title: Managing Partner | Title: *[illegible]* |
| Date: 10-APR-14 | Date: *[illegible]* |



Copyright 2014 InformaXion Solutions LLC. All rights reserved.

IXS

**Infinite Energy**

# Contacts

| Informaxion Solutions, LLC: | Vantus Group |
|---|---|
| Sales Contact | Jim Schroeder |
| Brian J. Lee | President & CEO |
| Managing Partner | (262) 968-5183 |
| (703) 910-3075 x 202 | james@vantus.com |
| blee@informaxionsolutions.com | |
| Lead Services Contact: | Invoices To: |
| Brian Lee | Vantus Group |
| Managing Partner | Attn: Accounts Payable Department |
| (703) 910-3075 x 202 | S54W29033 Saylesville Road |
| blee@informaxionsolutions.com | Waukesha, WI 53189 |
| Informaxion Solutions, LLC | |
| 110 N. Christophers Run | |
| Alpharetta, GA 30004 | |
| Phone: (703) 910-3075 | |
| Fax: (703) 910-3079 | |



Copyright 2014 InformaXion Solutions LLC. All rights reserved.

5